UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORE OPTICAL TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JUNIPER NETWORKS INC,<br><br>    Defendant. | Case No. 21-cv-02428-VC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 90 |

    Core Optical Technologies secured a patent to increase data transmission through fiber optic cables by decreasing signal interference, U.S. Patent No. 6,782,211 ('211 patent). It has sued several networking companies in the last decade, asserting both apparatus and method claims of the '211 patent. In this action, Core Optical asserts only method claims, alleging that Juniper Networks infringed the '211 patent by importing fiber optic devices configured to practice its patented methods. Juniper moves to dismiss the complaint, arguing primarily that because Core Optical failed to comply with the marking requirement, it cannot now seek damages under the Patent Act. *See* 35 U.S.C. § 287(a). But because Core Optical asserts only method claims in this litigation, Federal Circuit precedent permits damages. That precedent appears to be wrong, but this Court is stuck applying it. Juniper's other arguments—that Core Optical failed to adequately plead willful infringement, direct infringement, and indirect infringement—likewise fall short. The motion to dismiss is therefore denied.

    1. Section 287(a) provides that unless a patentee marks patented articles, "no damages shall be recovered by the patentee in any action for infringement." The marking requirement is designed "to give notice to the public of the patent." *American Medical Systems, Inc. v. Medical*

*Engineering Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). But it does not always apply. For instance, "where the patent claims are directed to only a method or process," the marking requirement does not apply because "there is nothing to mark." *Id.* Moreover, as relevant here, the Federal Circuit has held that even where a patent contains both apparatus and method claims, and even when there is something to mark, a patentee can avoid the marking requirement by asserting only method claims in litigation. *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1317 (Fed. Cir. 2009); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983); *Core Optical Technologies, LLC v. Nokia Corp.*, 2020 WL 6126285, at *6 (C.D. Cal. Oct. 8, 2020). *Crown Packaging* squarely answers the marking question here. Core Optical's complaint asserts only the '211 patent's method claims, not its apparatus claims. For that reason, Core Optical's failure to mark does not bar damages.

Juniper points to language from the Federal Circuit's earlier decision in *American Medical*, which stated that "[w]here the patent contains both apparatus and method claims, . . . to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so." 6 F.3d at 1538. But *Crown Packaging* rendered *American Medical*'s language dicta. It emphasized that in *American Medical*, "both apparatus and method claims . . . were asserted." *Crown Packaging*, 559 F.3d at 1317 (quoting *American Medical*, 6 F.3d at 1539). In *Crown Packaging*, by contrast, "the patentee only asserted method claims despite the fact that the patent contained both method and apparatus claims." *Id.* at 1317.

Juniper suggests that even if asserting only method claims typically allows parties to skirt the marking requirement, the Federal Circuit has drawn the line at gamesmanship. In *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co., Ltd.*, the patentee "filed a statutory disclaimer" of an apparatus claim once the defendant "sought to limit" damages using the marking statute. 853 F.3d 1370, 1382 (Fed. Cir. 2017). The district court rewarded the tactic, finding that "any prior obligation to mark products . . . vanished" when the patentee "disclaimed" its apparatus claim. *Id.* The Federal Circuit disagreed. The disclaimer gambit, in its view,

"effectively provides an end-run around the marking statute and is irreconcilable with the statute's purpose." *Id. Rembrandt* may well bar a patentee from asserting—and then withdrawing—apparatus claims in the same suit. But Core Optical does not assert (and has not ever asserted) apparatus claims against Juniper in this litigation.

Core Optical did bring both apparatus and method infringement claims under the '211 patent in prior lawsuits. In Juniper's view, Core Optical's decision to assert apparatus claims against other defendants in prior cases means it cannot now "switch off" the marking requirement. But *Crown Packaging*'s rule does not turn on what has happened in prior cases.

To be sure, *Crown Packaging*'s rule—which focuses on a patentee's litigation tactics—is hard to square with the text and purpose of the marking requirement. The Patent Act's text focuses on the "patented article," rather than the claims asserted in litigation. 35 U.S.C. § 287(a). And "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter." *Id.* The statute, in short, turns on whether the patentee took steps to "notif[y]" the "infringer," and not on the litigation tactics employed well after a "patented article" reaches the marketplace.

Purpose points in the same direction. As the Federal Circuit has explained elsewhere, "[t]he marking statute serves three related purposes: 1) helping to avoid innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (citations omitted). Whether divided into three related purposes or reduced to just one, marking is about notice and not about litigation tactics.

The language from *American Medical*, by contrast, accords with the marking statute's text and purpose. Recall that *American Medical* suggested applying the marking requirement wherever the patent "contains both apparatus and method claims . . . to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given." 6 F.3d at 1538. By tying the inquiry to the patent itself, the rule avoids gamesmanship and promotes

public notice. Think of how it might have applied here. Had Juniper come across one of the fiber optic devices embodying Core Optical's '211 patent, it would have discovered both the apparatus and method claims by looking up the patent. Conversely, by failing to mark the fiber optic devices, Core Optical neglected to offer the public notice when it otherwise could (and should) have. *See, e.g.*, *Mosel Vitelic Corp. v. Micron Technology, Inc.*, 2000 WL 1728351, at *2 (D. Del. Feb. 25, 2000).

The Federal Circuit took a wrong turn when it began basing application of the marking requirement on a patentholder's litigation decisions rather than on whether an article covered by the patent was marked. But the solution to a bad circuit rule is not for district courts to start concocting contorted exceptions to it. That would only exacerbate the confusion. This is a problem for the Federal Circuit (or perhaps the Supreme Court) to fix. For now, *Crown Packaging* controls, and Core Optical is permitted to seek damages despite its failure to mark.

2. Juniper next moves to dismiss Core Optical's willful infringement claim, arguing that the complaint fails to allege pre-suit knowledge of the '211 patent or "egregious" conduct. The Patent Act permits courts to award enhanced damages of "up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a punitive or vindictive sanction for egregious infringement behavior." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016) (quotations omitted). Although district courts retain broad discretion to award enhanced damages, "[k]nowledge of the patent alleged to be willfully infringed" is a "prerequisite." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). As for egregiousness, a patentee need only plead that the defendant engaged in "deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *see also Berall v. Pentax of America, Inc.*, 2021 WL 3934200, at *4 n.6, *9 (S.D.N.Y. Sept. 2, 2021) (requiring only a plausible allegation of deliberate or intentional infringement "at the pleading stage," *id.* at *9); *APS Technology, Inc. v. Vertex Downhole, Inc.*, 2020 WL 4346700, at *4 (D. Del. July 29, 2020) (same).

Core Optical's complaint alleges that Juniper "knew of the '211 patent's existence . . . due to Core's filing of complaints for infringement" in prior cases against Ciena, Fujitsu, and Infinera. It points as well to Juniper's relationship with its partner, Fujitsu. Core Optical alleges that in a separate case against Cisco, Cisco admitted that "its customer Fujitsu informed it of the '211 patent." Core Optical asserts that due to Juniper's partnership with Fujitsu, Juniper must have also learned about the patent. These allegations may be a thin reed on which to rest pre-suit knowledge, but they pass the plausibility line at this stage.

In Juniper's view, that a patent has "been the subject of previous litigation within" an "industry" is insufficient, as a matter of law, to allege pre-suit knowledge. *Radware, Ltd. v. A10 Networks, Inc.*, 2013 WL 5373305, at *3 (N.D. Cal. Sept. 24, 2013); *see also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F.Supp.2d 225, 233 (D. Del. 2012). But Core Optical alleges more. Not only does it identify three prior lawsuits concerning the same patent in a tight-knit industry, but Core Optical also surfaces Juniper's connection to a party known to have disclosed the '211 patent's existence to others. Taken together, these facts plausibly suggest pre-suit knowledge.

Juniper separately asserts that the complaint fails to plead egregiousness. It points to cases in this District requiring that plaintiffs plead both knowledge *and* egregiousness. *See Google LLC v. Princeps Interface Technologies LLC*, 2020 WL 1478352, at *2 (N.D. Cal. Mar. 26, 2020). But *Eko Brands* points the other way. *See* 946 F.3d at 1378. Because Core Optical has asserted that Juniper deliberately infringed the '211 patent, its complaint pleads willful infringement; the ultimate question whether the alleged conduct is sufficiently egregious to warrant enhanced damages is for the Court to decide at summary judgment or after trial.

3. Juniper last contends that Core failed to plead direct and indirect infringement. As to direct infringement, the complaint alleges that Juniper used the fiber optic devices in the United States and assisted others in using the devices to infringe Core's patent. TAC ¶ 66 (alleging infringement "using Accused Instrumentalities in the U.S., either directly or through intermediaries, and/or by providing direct assistance to . . . U.S. customers in using Accused

5

Instrumentalities"); *id.* ¶ 89 (alleging that Juniper operated the devices "either personally, through intermediaries, or in conjunction" with others "within the U.S."). Juniper argues that Core Optical has failed to provide factual support to back up that theory. It may well be that after discovery Juniper will be entitled to summary judgment on the point. But at this stage, the complaint pleads enough.

As to indirect infringement, Core Optical's complaint adequately alleges both induced and contributory infringement. Induced infringement occurs if a party has "specifically intended" its "customers to infringe" and "knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). As discussed above, Core Optical's complaint alleges enough facts to plausibly suggest that Juniper knew about the '211 patent. And it has alleged specific intent too. The Federal Circuit has found it enough to assert that a defendant, among other things, "provid[ed] instructions, support, and technical assistance" to another in committing infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). Core Optical alleges just that, asserting that Juniper "provided service, maintenance, technical support, or other active assistance" to customers "with the specific intent" to encourage acts constituting infringement.

Contributory infringement occurs where a party "sells . . . or imports . . . a material or apparatus for use in practicing a patented process, . . . knowing the same to be especially . . . adapted for use in an infringement of such patent, and not . . . suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Core Optical's complaint alleges that Juniper imported devices that are "not capable of substantial noninfringing use" and instead, when "configured . . . during normal use," "are especially adapted to perform" the methods described in the '211 patent. Assuming those allegations to be true, "this is a factual inquiry not suitable for resolution on a motion to dismiss." *Nalco*, 883 F.3d at 1357.

**IT IS SO ORDERED.**

Dated: October 7, 2021

VINCE CHHABRIA
United States District Judge